IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD BLAGRAVE              :         CIVIL ACTION
                              :
            v.                :
                              :
NUTRITION MANAGEMENT          :
SERVICES CO., et al.          :         NO. 05-6790

MEMORANDUM

Bartle, C.J.                                    July 8, 2008

        Plaintiff Richard Blagrave ("Blagrave") brings this

action against his former employer, Nutrition Management Services

Co. ("NMSC"), as well as against Joseph Roberts ("Roberts"),

NMSC's co-founder and Chief Executive Officer, and Kathleen Hill

("Hill"), NMSC's co-founder and President.  He asserts claims

for:  (1) retaliation for reporting mail and wire fraud and

securities fraud under the Sarbanes-Oxley Act ("SOX"), 18 U.S.C.

§ 1514A, *et seq.*; (2) violations of Pennsylvania's Wage Payment

and Collection Law ("WPCL"), 43 Pa. Stat. Ann. § 260.1, *et seq.*;

(3) fraudulent misrepresentation under Pennsylvania Common Law;

and (4) piercing of the corporate veil against defendant

Roberts.[1]  Now pending before the court is the motion of

defendants for summary judgment under Rule 56(c) of the Federal

Rules of Civil Procedure.

_____

1.  In addition, Blagrave initially brought a claim for
intentional infliction of emotional distress under Pennsylvania
law, but he has since withdrawn that claim.

I.

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see Fed. R. Civ. P. 56(c).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  After reviewing the evidence, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant.  In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

II.

For purposes of the pending motion for summary judgment, the following facts are undisputed.

In May, 2004, Blagrave and NMSC began discussions which resulted in NMSC offering Blagrave employment as its Senior Vice President of Operations.  Though Blagrave declined the initial offer, the two sides entered into negotiations with respect to Blagrave's salary, bonus, and other terms of his contract.  At the conclusion of these negotiations, NMSC finalized its offer of employment and sent Blagrave a letter to that effect.  The offer letter concludes:  "Please formally acknowledge your acceptance of our offer by signing this letter and [the attached] Management Agreement and returning the originals prior to start date."

Blagrave signed the letter on June 30, 2004 and began employment
with NMSC six days later, on July 6, 2004.[2]

Blagrave worked at NMSC for approximately five months,
until December, 2004.  During this time, there were a number of
disagreements between Blagrave and defendant Roberts.  As a
result, Blagrave alleges that he was relieved of a number of his
professional responsibilities over the course of his employment.
In early December, 2004, NMSC informed Blagrave that they did not
have a signed copy of his Management Agreement in his file, as
NMSC internal policies required.  A few weeks later, Blagrave
attended a meeting with defendant Hill and a human resources
employee.  At that meeting, Blagrave stated that he was unwilling
to sign a Management Agreement because it contained a covenant
not to compete that was unduly long and he was concerned that
NMSC would quickly terminate him and leave him unable to pursue
other work in his profession.  Blagrave was informed that he
would be terminated unless he signed the Management Agreement.
He again refused to sign the Agreement and resigned.

Three months after leaving NMSC, Blagrave filed a SOX
complaint with the Department of Labor ("DOL").  On May 25, 2005,
after concluding an investigation, the DOL ruled that there was
"no reasonable cause to believe that [NMSC] violated SOX."  It
dismissed Blagrave's complaint on the grounds that his separation

--------------------------------------------------

2.  It is disputed as to whether Blagrave also signed the
Management Agreement at that time.

of employment occurred because he refused to sign the Management
Agreement.  Blagrave then filed the present action on
December 29, 2005.[3]

### III.

In Count I of his complaint, Blagrave alleges that
defendants retaliated against him for reporting mail, wire and
securities fraud under SOX.  Section 806 of SOX, codified at 18
U.S.C. § 1514A, provides whistleblower protection for employees
of publicly-traded companies.  Pub. L. No. 107-204, 116 Stat.
745, 802-04 (2002); Livingston v. Wyeth, Inc., 520 F.3d 344, 351
(4th Cir. 2008); Allen v. Admin. Review Bd., 514 F.3d 468, 475
(5th Cir. 2008).  Specifically, § 1514A(a) provides in relevant
part that:

> (a) No [publicly-traded company], or any
> officer [or] employee ... of such company,
> may discharge, demote, suspend, threaten,
> harass, or in any other manner discriminate
> against an employee in the terms and
> conditions of employment because of any
> lawful act done by the employee--
>
>> (1) to provide information,
>> cause information to be provided, or
>> otherwise assist in an investigation
>> regarding any conduct which the employee
>> reasonably believes constitutes [mail
>> fraud, wire fraud, bank fraud or
>> securities fraud], any rule or regulation

---

3.  On December 23, 2005, Blagrave also filed a qui tam complaint
in this court alleging that NMSC had defrauded Medicare, Medicaid
and other government programs by not disclosing rebates it
received from manufacturers and vendors to customers which were
reimbursed by those government programs.  Blagrave voluntarily
dismissed that action on December 3, 2007, after the government
declined to intervene.  Blagrave v. Nutrition Mgmt. Servs. Co.,
Civ. A. No. 05-6724 (E.D. Pa. Dec. 3, 2007).

of the Securities and Exchange Commission,
or any provision of Federal law relating
to fraud against shareholders, when the
information or assistance is provided to
or the investigation is conducted by—

\*\*\*

(C) a person with supervisory
authority over the employee (or such
other person working for the employer
who has the authority to investigate,
discover, or terminate misconduct)[.]

An employee's belief that the reported conduct constitutes fraud
must be objectively and subjectively reasonable.  <u>Allen</u>, 514 F.3d
at 477.  Here, all parties agree that defendants Roberts and Hill
were the only NMSC employees with supervisory authority over
Blagrave.

Blagrave must first demonstrate a prima facie violation
of § 1514A.  He must establish by a preponderance of the evidence
that:  (1) he engaged in protected activity or conduct by
providing information or a complaint to a NMSC supervisor or to
one authorized to investigate and correct misconduct; (2) NMSC
knew or suspected that Blagrave engaged in the protected
activity; (3) Blagrave suffered an unfavorable personnel action;
and (4) the circumstances were sufficient to raise the inference
that the protected activity was a contributing factor in the
unfavorable personnel action.  29 C.F.R. § 1980.104; <u>Allen</u>, 514
F.3d at 476.  If Blagrave establishes these four elements, NMSC
can nonetheless avoid liability if it can "demonstrate[] by clear
and convincing evidence that it would have taken the same
unfavorable personnel action in the absence of the complainant's

-5-

protected behavior or conduct."  29 C.F.R. § 1980.104; <u>Allen</u>, 514
F.3d at 476.  Defendants challenge Blagrave's ability to meet
each of the four elements of a prima facie case and additionally
assert that they would have taken the same unfavorable personnel
action in any event.

Blagrave sets forth in the complaint, either
specifically or generally, a total of seventeen alleged
violations of § 1514A, which he divides into five broader
categories.  First, he alleges that defendants committed mail and
wire fraud based on a scheme to defraud customers by making false
statements and representations in client proposals with respect
to:  (1) the provision of specific personnel and programs; (2)
the Meal Tracker program; (3) NMSC's cook/chill operations; (4)
NMSC's booster and formed puree programs; and (5) charges of
40.9% in addition to an employee's salary for payroll and other
administrative expenses.  Second, Blagrave contends the NMSC
engaged in a kickback scheme wherein NMSC received rebates from
manufacturers or vendors but did not accurately disclose those
rebates to customers which, in his view, is also mail and wire
fraud.  Third, Blagrave asserts mail and wire fraud violations
stemming from a mischarging scheme under which defendants
defrauded four customers: (1) St. Joseph's Hospital; (2) New
Courtland; (3) Montgomery School; and (4) St. Vincent's.  Fourth,
Blagrave maintains that defendants perpetrated a fraud on union
locals and on their New York employees such that they engaged in
mail or wire fraud.  Finally, Blagrave alleges a securities fraud

-6-

scheme accusing defendants of:  (1) understating NMSC's payables by systematically failing to process vendor bills in a timely manner and making misrepresentations on financial records to understate amounts owed by customers New Courtland, United Methodist, Presbyterian Homes and Plymouth House; (2) inflating NMSC's receivables by overstating the amount owed by customers and understating "bad debt" reserves; (3) inflating NMSC's receivables by overbilling clients; and (4) misrepresenting NMSC's expenses by paying personal expenses for Roberts, and recording such as a legitimate business expense.  Blagrave argues that there exist disputed issues of material fact as to each of these alleged violations of § 1514A such that it would be improper to grant the motion of defendants for summary judgment as to any of them.

In determining whether Blagrave points to sufficient evidence to raise a disputed issue of material fact, we must address whether we may properly consider as evidence the Declaration of Richard Blagrave attached to plaintiff's brief in opposition to defendants' motion for summary judgment.  The Declaration and plaintiff's opposition brief were both dated June 2, 2008.  The Declaration states that Blagrave's purpose in submitting it was "to further amplify and clarify [his] deposition testimony" and "to support [his] Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment."  Blagrave Decl. at ¶¶ 3 and 2.  The Declaration's factual averments consist primarily of details regarding complaints that Blagrave made to

Roberts or Hill with respect to some of the alleged violations of
SOX.  In addition, there are a small number of averments
pertaining to Blagrave's claim for fraudulent misrepresentation.
Defendants counter that Blagrave's Declaration must be
disregarded under the "sham affidavit doctrine."

As articulated by our Court of Appeals, the sham
affidavit doctrine directs district courts to disregard a
subsequent affidavit from a witness who has given prior testimony
when "the affidavit comes in later to explain away or patch up
[earlier testimony] in an attempt to create a genuine issue of
material fact."  In re CitX Corp., Inc., 448 F.3d 672, 679 (3d
Cir. 2006); Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir.
1991).  "A sham affidavit is a contradictory affidavit that
indicates only that the affiant cannot maintain a consistent
story or is willing to offer a statement solely for the purpose
of defeating summary judgment."  Jiminez v. All Am. Rathskeller,
Inc., 503 F.3d 247, 253 (3d Cir. 2007).  Thus, "if it is clear
that an affidavit is offered solely for the purpose of defeating
summary judgment, it is proper for the trial judge to conclude
that no reasonable jury could accord that affidavit evidentiary
weight and that summary judgment is appropriate."  Id.

We conclude that Blagrave's Declaration cannot be
considered competent evidence and is being offered solely to
defeat the motion of defendants for summary judgment.  Blagrave
was deposed twice in this matter, first on October 12, 2005 and
again on March 28, 2008.  In each of these depositions, Blagrave

-8-

was asked about the details of the complaints he made to Roberts
and Hill.  He was not forthcoming with the information described
for the first time in his Declaration.  In addition, defendants'
written interrogatories, answered by Blagrave on March 15, 2008,
asked him specifically to identify with respect to each of
defendants' alleged violations of SOX:

> [A]ny and all comments, notes, complaints,
> and/or communications by Blagrave to any
> individual at [NMSC] ... including:
>
>     (a) The date, time, and place of each
> comment, note, complaint, and/or
> communication;
>
>     (b) The person(s) to whom Blagrave made
> each comment, note, complaint and/or
> communication;
>
>     (c) The content and substance of each
> and every comment, note, complaint, and/or
> communication made by Blagrave;
>
>     (d) The method by which Blagrave
> conveyed his comment, note, complaint, and/or
> communication (e.g., letter, electronic mail,
> telephone, in-person communication, etc.);
> and
>
>     (e) Identify any documents that
> evidence, refer, or relate to Blagrave's
> comment, note, complaint, and/or
> communication.

Defs.' First Set Interrogs. at Nos. 8, 10, 12, 14, 16.  Blagrave
did not provide in his answers the information now belatedly
provided in his Declaration.  He has offered no explanation as to
why the information set forth in his Declaration was not
disclosed in his answers to detailed questions asked of him at
his two depositions or in response to the defendants' detailed

interrogatories.  Under these circumstances, no reasonable jury could accord the Declaration evidentiary weight, and we will not do so either.

Blagrave does not point to any record evidence other than his Declaration with respect to the following claims under SOX:  (1) the provision of nutrition care management services with specific personnel and programs (Pl.'s Compl. at ¶ 15(1)); (2) the cook/chill operations (Pl.'s Compl. at ¶ 15(3)); (3) St. Joseph's Hospital (Pl.'s Compl. at ¶ 24); (4) St. Vincent's (Pl.'s Compl. at ¶ 27; (5) NMSC's New York Employees (Pl.'s Compl. at 28); (6) Presbyterian Homes; and (7) Plymouth House. Furthermore, Blagrave has failed to cite to any evidence to show that he complained to Roberts or Hill regarding the following claims:  (1) NMSC's booster and formed puree programs (Pl.'s Compl. at ¶ 15(4)); (2) securities fraud allegations that clients were overbilled (Pl.'s Compl. at ¶ 30(3)); and (3) securities fraud allegations that NMSC misrepresented its expenses by paying personal expenses for Roberts (Pl.'s Compl. at ¶ 30(4)).  We will therefore enter summary judgment against Blagrave and in favor of defendants on his SOX claim insofar as he relies on the above factual support.

With respect to the remainder of Blagrave's claim under SOX, we find that there exist genuine issues of material fact as to whether Blagrave is able to make out a prima facie case and as to whether defendants would have taken the unfavorable personnel action regardless of whether Blagrave had engaged in protected

action.   The motion of defendants for summary judgment as to the
remainder of this claim will be denied.

IV.

Count II of Blagrave's complaint alleges that NMSC
breached an oral agreement to reimburse him for certain of his
COBRA payments and other employment-related expenses, in
violation of Pennsylvania's Wage Payment and Collection Law, 43
Pa. Stat. Ann. § 260.1, *et seq.*  Pl.'s Compl. at ¶ 42.  Because
the existence of such an oral agreement is a disputed issue of
material fact, we will deny defendants' motion with respect to
this claim.

V.

Count III alleges a claim for fraudulent
misrepresentation under Pennsylvania common law.  Both parties
agree that to establish his claim for fraudulent
misrepresentation under Pennsylvania law Blagrave must prove:

> (1) a representation; (2) which is material
> to the transaction at hand; (3) made falsely,
> with knowledge of its falsity or recklessness
> as to whether it is true or false; (4) with
> the intent of misleading another into relying
> on it; (5) justifiable reliance on the
> misrepresentation; and (6) the resulting
> injury was proximately caused by the
> reliance.

Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994) (citation omitted)

Blagrave maintains that various statements regarding
NMSC's bonus policy made to him by Roberts were false and were
intended to induce Blagrave to begin working with NMSC.
Specifically, the complaint alleges that Roberts made three false

-11-

statements to Blagrave that:  (1) eighty-nine percent (89%) of all eligible NMSC employees received annual bonuses; (2) every employee who received a bonus received ninety to one hundred percent (90-100%) of the amount he or she was eligible to receive; and (3) Blagrave would receive a bonus totaling thirty-six (36%) of his base pay.[4]  The only record evidence to which Blagrave cites in support of his contention that Roberts made these statements is ¶ 5 of his Declaration, which we have already concluded cannot be properly considered.  Accordingly, we will grant summary judgment for the defendants as to Count III of the complaint.

VI.

Finally, Count IV seeks to pierce the corporate veil and hold defendant Joseph Roberts, who is the majority shareholder of NMSC, personally liable for all claims against the corporation.  Because a shareholder is generally not personally liable for the obligations of a corporation, "the corporate veil is pierced only when the corporation was an artifice and a sham to execute illegitimate purposes and an abuse of the corporate fiction and immunity that it carries."  Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1521 (3d Cir. 1994) (citations

---

4.  In his brief in opposition Blagrave appears to concede that this third statement was not falsely made, and instead hinges his argument on Roberts' statements which misrepresented NMSC's history of paying bonuses to management.  Pl.'s Mem. in Opp'n at 32-33.

and internal quotations omitted), <u>aff'd</u> 514 U.S. 938 (1995).
This extraordinary remedy is only justified if it is

> shown that a corporation's affairs and
> personnel were manipulated to such an extent
> that it became nothing more than a sham used
> to disguise the alter ego's use of its assets
> for his own benefit in fraud of its
> creditors.  In short, the evidence must show
> that the corporation's owners abused the
> legal separation of a corporation from its
> owners and used the corporation for
> illegitimate purposes.

<u>Id.</u> (citation omitted).  In determining whether a shareholder
should be personally liable, courts may consider the following:

> [F]ailure to observe corporate formalities,
> non-payment of dividends, insolvency of the
> debtor corporation at the time, siphoning of
> funds of the corporation by the dominant
> shareholder, non-functioning of other
> officers or directors, absence of corporate
> records, and the fact that the corporation is
> merely a facade for the operations of the
> dominant stockholder or stockholders.

<u>Id.</u> (citations and quotations omitted).

> In the instant matter, the complaint alleges that:

> 51.  Defendant Roberts is the majority
> shareholder and Chief Executive Officer of
> NMSC.  Roberts exercised near complete
> control over the affairs of NMSC and
> personally guaranteed NMSC's line of credit.
> At Roberts' direction, NMSC has paid and is
> paying Roberts excessive amounts of
> remuneration through companies owned or
> controlled by Roberts.

> 52.  Roberts has used NMSC funds to pay
> personal expenses for himself rather than
> paying NMSC's creditors and vendors in a
> timely manner.  Roberts has engaged in
> mismanagement and waste of NMSC's corporate
> assets and engaged in a pattern of
> mismanagement.

-13-

Pl.'s Compl. at ¶¶ 51, 52.  These allegations remain entirely
unsubstantiated.  Blagrave points to evidence showing at most
that NMSC made payments to a corporation, Ocean 7, which was
wholly owned by Roberts and which owned a beach house at the New
Jersey shore that was used by Roberts, among others.[5]  This
evidence is insufficient as a matter of law to meet Blagrave's
heavy burden of showing that the corporate form was a "sham"
constituting Roberts' "alter ego."  <u>Kaplan</u>, 19 F.3d at 1521.  We
will therefore grant the motion of defendants for summary
judgment as to this claim.

VII.

In sum, we will grant the motion of defendants for
summary judgment and deny it in part.  We will enter judgment in
favor of the defendants and against the plaintiffs as to the SOX
claim in Count I insofar as it relies on:  (1) the provision of
nutrition care management services with specific personnel and
programs; (2) the cook/chill operations; (3) St. Joseph's
Hospital; (4) St. Vincent's; (5) NMSC's New York Employees; (6)
Presbyterian Homes; (7) Plymouth House; (8) NMSC's booster and
formed puree programs; (9) securities fraud allegations that
clients were overbilled; and (10) securities fraud allegations
that NMSC misrepresented its expenses by paying personal expenses
for Roberts.  We will likewise grant the motion of defendants for

---

5.  Roberts stated that the property is "used for employees.  It
is used for customers and it is used a couple of weeks a year by
myself."  Roberts Decl. of April 28, 2008 at 8:11-16.

-14-

summary judgment as to Counts III and IV.  Defendants' motion is
otherwise denied.  We will dismiss Count V of the complaint, as
that claim has been withdrawn by Blagrave.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
RICHARD BLAGRAVE              :         CIVIL ACTION
                              :
          v.                  :
                              :
NUTRITION MANAGEMENT          :
SERVICES CO., et al.          :         NO. 05-6790
```

<u>ORDER</u>

AND NOW, this 8th day of July, 2008, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1)  the motion of defendants Nutrition Management Services Co., Joseph Roberts and Kathleen Hill for summary judgment is GRANTED in part and DENIED in part;

(2)  the motion of defendants for summary judgment is GRANTED insofar as plaintiff relies on the following allegations to support his claim in Count I of the complaint:  (1) the provision of nutrition care management services with specific personnel and programs; (2) the cook/chill operations; (3) St. Joseph's Hospital; (4) St. Vincent's; (5) NMSC's New York Employees; (6) Presbyterian Homes; (7) Plymouth House; (8) NMSC's booster and formed puree programs; (9) securities fraud allegations that clients were overbilled; and (10) securities fraud allegations that NMSC misrepresented its expenses by paying personal expenses for Roberts;

(3)  the motion of defendants for summary judgment is GRANTED as to Counts III and IV of the complaint;

(4)   the motion of defendants for summary judgment is otherwise DENIED because of the existence of genuine issues of material fact; and

(5)   Count V of the complaint is DISMISSED.

BY THE COURT:


/s/ Harvey Bartle III
                                        C.J.

-2-