```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


RICHARD BLAGRAVE              :        CIVIL ACTION
                             :
          v.                 :
                             :
NUTRITION MANAGEMENT         :
SERVICES CO., et al.         :        NO. 05-6790
```

                            MEMORANDUM

Bartle, C.J.                                    February 20, 2009

          Following a five-day jury trial, judgment was entered

in favor of the plaintiff, Richard Blagrave, and against his

former employer, Nutrition Management Services Co. ("Nutrition

Management"), and its officers, Joseph Roberts, and Kathleen

Hill, in the amount of $2,598.38 under Pennsylvania's Wage

Payment and Collection Law ("WPCL"), 43 Pa. Stat. Ann. § 260.1 et

seq.  The jury, however, found the plaintiff had failed to meet

his burden of proof with respect to his claim for unlawful

retaliation in violation of the Sarbanes-Oxley Act ("SOX"), 18

U.S.C. §1514A, et seq.  Now pending before the court is the

motion of Richard Blagrave for attorneys' fees in the amount of

$147,065.65 and costs in the amount of $9,705.13 pursuant to

§ 9a(f) of Pennsylvania's WPCL.

                               I.

          The plaintiff filed a five-count complaint alleging

violations of SOX and Pennsylvania's WPCL, as well as several

common law causes of actions.  After the plaintiff withdrew his

claim for intentional infliction of emotional distress, the court

granted summary judgment with respect to the plaintiff's claims for fraudulent misrepresentation and "piercing the corporate veil" and with respect to a portion of his SOX claim.

Blagrave's focus at trial was his SOX claim for unlawful retaliation, which involved attempting to prove he suffered an unfavorable personnel action for providing information about allegedly fraudulent acts committed by defendants.  The alleged fraudulent acts in this case included a scheme by Nutrition Management to defraud its customers by, among other things, misrepresenting to clients the personnel it staffed to its accounts, misrepresenting its payroll expenses, failing to disclose vendor rebates, fraudulently mischarging clients for various expenses, and overstating its accounts receivables and payables.[1]  In contrast, the WPCL claim, which centered on whether Blagrave and Nutrition Management entered into an oral agreement for the payment of his COBRA and business related expenses, played a minor role at trial.

The damages portion of the trial included testimony from plaintiff's vocational expert who opined that his loss of earning capacity ranged between approximately $482,000 and $562,000.  This would have been compensable under the SOX claim. The jury, as noted above, rejected plaintiff's SOX claim for

---

1.  Blagrave's Pretrial Memorandum characterizes his lawsuit as a "Sarbanes-Oxley whistleblower lawsuit." Pl.'s Pretrial Mem., p. 2.

unlawful retaliation and awarded him only $2,598.38 in damages
under the WPCL.

II.

Section 260.9a(f) of Pennsylvania's WPCL states:

> The court in any action brought under this
> section shall, in addition to any judgment
> awarded to the plaintiff or plaintiffs, allow
> costs for reasonable attorneys' fees of any
> nature to be paid by the defendant.

43 Pa. Stat. Ann. § 260.9a(f).

In statutory fee-shifting cases, we apply the
"lodestar" method of calculating attorneys' fees, which requires
us to multiply the number of hours reasonably expended by a
reasonable hourly rate. Loughner v. Univ. of Pittsburgh, 260
F.3d 173, 177 (3d Cir. 2001). If and when the party seeking fees
carries his burden "of showing that the claimed rates and number
of hours are reasonable, the resulting product is presumed to be
the reasonable fee to which counsel is entitled." Maldonado v.
Houstoun, 256 F.3d 181, 184 (3d Cir. 2001). Nonetheless, the
court retains the discretion to modify the lodestar and may
adjust it downward if it is unreasonable in light of the results
obtained. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.
1990). One reason for such a reduction can be "for time spent
litigating wholly or partially unsuccessful claims that are
related to the litigation of the successful claims." Id.

**A. Hours Expended**

A court calculating the hours reasonably expended must
"review the time charged, decide whether the hours set out were

reasonably expended for each of the particular purposes described
and then exclude those that are 'excessive, redundant, or
otherwise unnecessary.'" Public Int. Research Group of N.J.,
Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995); Maldonado,
256 F.3d at 184.  Our Court of Appeals has stressed that the
court has "a positive and affirmative function in the fee fixing
process, not merely a passive role." Id.; Loughner, 260 F.3d at
178.  It has further explained that we should "reduce the hours
claimed by the number of hours spent litigating claims on which
the party did not succeed, that were distinct from the claims on
which the party did succeed, and for which the fee petition
inadequately documents the hours claimed." Id.  Furthermore, the
party opposing the motion for fees has the burden "to challenge
'by affidavit or brief with sufficient specificity to give fee
applicants notice, the reasonableness of the requested fee.'"
Id. (citing Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.
1990).

        Blagrave contends that he actually expended over
$248,000 in attorneys' fees for the successful prosecution of his
relatively simple WPCL claim, on which he recovered $2,598.38.
He asserts this claim required a team of 4 attorneys, 2 law
clerks, and 2 paralegals and the expenditure of over 720 billable
hours.  However, in apparent recognition of the incredulity of
such a request, he seeks to recover only $147,065.65 of those
fees under the WPCL statute providing for the recovery of a
reasonable attorney fee.  Despite plaintiff's protests to the

-4-

contrary, these reduced figures are likewise incredulous.  They defy common sense and are palpably excessive.

In order to analyze Blagrave's request, we must understand the formula he used to arrive at these figures.  With respect to hours expended, Blagrave reached the 723 hour figure by eliminating from the total of 1,521 hours billed for the entire litigation, a portion of those hours spent prosecuting his unsuccessful claim under the Sarbanes-Oxley Act, and all hours spent prosecuting his state law claims for fraud and to pierce the corporate veil.  According to plaintiff, this reduced his total attorneys' fees from $527,347.15 to his initial lodestar value of $248,014.15.

He then reduced the hours spent on pretrial discovery, summary judgment briefing, trial preparation and trial by 50% as a means of isolating time spent on "the WPCL claim and the time spent on his SOX claim that were inextricably intertwined with the factual proof necessary to establish Blagrave's WPCL claims." Pl.'s Mot. for Att'y Fees & Costs, p. 12.  Thus, Blagrave asserts he should recover for a portion of the time spent litigating his unsuccessful SOX claim because it derived from a "common core of facts" with his WPCL claim.  The alleged common core of facts that Blagrave argues is relevant to both his WPCL and SOX claims involves the issue whether he entered into a written Management Agreement providing for payment of his COBRA expenses.

With respect to his SOX claim, Blagrave asserted Nutrition Management unlawfully retaliated against him for

-5-

providing information about allegedly fraudulent acts committed by it.  Under SOX, a publicly traded corporation such as Nutrition Management may not discharge, demote, suspend, threaten, harass or otherwise retaliate against an employee when that employee provides information to his employer that the employer is engaging in wire fraud, mail fraud, or securities fraud, among other things.  To prevail on his claim of retaliation under SOX, Blagrave had to prove, among other things, that he suffered an unfavorable personnel action as a result of providing such information.  Nutrition Management denied the allegations and countered that Blagrave's employment ended because he refused to sign the Management Agreement presented to him.

Blagrave's WPCL claim required that he prove that he entered into an oral contract with Nutrition Management under which Nutrition Management was required to pay for his COBRA and business expenses.  Nutrition Management argued that it did not enter into an oral agreement to pay for Blagrave's COBRA expenses.  It maintained that any COBRA benefit would have been included in the written Management Agreement which he never signed.

We must initially determine whether Blagrave's SOX claim and his WPCL claim derive from a common core of facts such that he is entitled to recover for a portion of the time spent litigating his unsuccessful SOX claim.  In Hensley v. Eckerhart, 461 U.S. 424 (1983), the Supreme Court explained:

-6-

> In other cases the plaintiff's claims for
> relief will involve a common core of facts or
> will be based on related legal theories.
> Much of counsel's time will be devoted
> generally to the litigation as a whole,
> making it difficult to divide the hours
> expended on a claim-by-claim basis.  Such a
> lawsuit cannot be viewed as a series of
> discrete claims.  Instead the district court
> should focus on the significance of the
> overall relief obtained by the plaintiff in
> relation to the hours reasonably expended on
> the litigation.

Id. at 435.

Blagrave's SOX and WPCL claims were not interrelated, did not derive from a common core of facts, and were not based on related legal theories.  We acknowledge that the Management Agreement played a role in both of these causes of action but for entirely different purposes.  With respect to the WPCL claim, Blagrave was forced to address the Management Agreement by virtue of the defendant's contention that it only agreed to pay the COBRA and business expenses pursuant to the Management Agreement which Blagrave never executed.  As to the SOX claim, Blagrave asserted that his refusal to sign the Management Agreement was a pretext for his termination and thus was relevant to whether he suffered an adverse personnel action.  What it said about COBRA was irrelevant.

Blagrave's claims do not involve related legal theories and are simply too distinct to derive from a "common core of facts."  Accordingly, we will not award attorneys' fees to Blagrave for hours spent prosecuting his claim for unlawful retaliation under SOX.

-7-

Blagrave's motion for attorneys' fees divides the time spent litigating the case into the following four categories: (1) 196.3 hours for pretrial tasks, including discovery; (2) 86.9 hours for summary judgment briefing; (3) 289.9 hours for trial preparation; and (4) 150.9 hours for attendance at the trial.[2]

These hours are excessive for the relatively uncomplicated WPCL claim at issue and, as noted, inappropriately include those hours devoted to developing the SOX claim. Nutrition Management highlights that the WPCL count in the complaint comprises four paragraphs and approximately 1 page in the 16 page document and asserts that only 1 of the 17 interrogatories served by Blagrave addressed the wage issue. Additionally, only 1 of the 75 document requests pertained to this claim.  With respect to trial, Nicholas Harbist, the senior partner at Blank Rome supervising the Blagrave prosecution, concedes in his Declaration that the testimony of Nutrition Management's Director of Nutrition Services, Walt Wanas, Nutrition Management employee, Joseph Berenato, and the plaintiff's vocational expert, David Gibson, was not necessary for the wage claim.

With the benefit of having presided over this litigation, we conclude that a reasonable number of hours for the WPCL claim was:  (1) 20 hours on pretrial tasks, including

---

2.  We are aware that this totals 723.9, rather than the 723.5 requested by Blagrave.

discovery; (2) 6 hours on summary judgment briefing; (3) 8 hours on trial preparation; and (4) 4 hours for trial.

Furthermore, only one attorney will be compensated for any of these tasks.  One attorney could have competently prosecuted the straight-forward WPCL claim, which was essentially a simple breach of contract action.  We are cognizant of the need for a team of trial attorneys where the legal theories involved are complex and the factual predicate is complicated.  However, that is not the case here.

In Hensley, the Supreme Court advised that a district court calculating the lodestar fee should exclude those hours that were not "reasonably expended." Id. at 434.  It explained that cases "may be overstaffed, and the skill and experience of lawyers vary widely." Id.  Thus, the party requesting fees "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" Id.  In this regard, our Court of Appeals has cautioned that "[t]rial courts should not accept passively the submission of counsel to support the lodestar amount ....  For example, where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time." Lanni v. State of New Jersey, 259 F.3d 146, 151 (3d Cir. 2001) (citing Rendine v. Pantzer, 661 A.2d 1202, 1226 (N.J. 1995)).  In Maldonado, our Court of Appeals, analyzing the reasonableness of attorneys' fees incurred on the appeal of a § 1983 action, reasoned:

> Our principal concern is whether the time
> claimed is reasonable for the services
> performed, a concern which is accentuated
> because of the many lawyers involved in
> behalf of the plaintiffs.  Ordinarily, this
> appeal could have been briefed and argued by
> a single lawyer or two.  Lawyers should
> understand that although the likelihood of
> success in a fee shifting case may be
> promising, the prospects of payment by a
> defendant with a deep pocket or a defendant
> with tax collecting powers should not
> encourage the utilization of an excess number
> of lawyers on the preparation of the appeal.
> Nor is work on the appeal intended to be a
> training school for law students or embryonic
> lawyers at the expense of the losing party.

Id. at 185.

The Blagrave matter was over-staffed with 4 attorneys, 2 law clerks, and 2 paralegals.  The most senior attorney, Nicholas Harbist, who routinely commands an hourly rate of over $500 an hour, should not have been staffed on this claim and, accordingly, his time will not be compensated.  We will also deduct the entire time billed by attorney Andrea Waye, the 2 law clerks and the 2 paralegals.  A team of professionals this large on a claim this simple is unreasonable and unnecessary.

Attorneys Kit Applegate and Jason Norris billed the majority of the hours on this file and conducted the bulk of the pretrial discovery, briefing and trial.  Mr. Applegate performed the pretrial tasks, trial preparation and was lead counsel at trial.  Accordingly, the hours awarded for those tasks will be billed at his rate.  Mr. Norris, the younger associate on the file, drafted the response to Nutrition Management's motion for summary judgment.  Therefore, the 6 hours awarded for that task

will be billed at his rate.  Mr. Norris also attended the entire five day trial and billed the hours correlating to this attendance.  Those hours will not be compensated because this simple claim could have been handled competently, without assistance, by Mr. Applegate.

Nutrition Management makes specific objections to hours billed by Mr. Norris for the summary judgment briefing. Nutrition Management contends that 19.90 hours he billed should be deducted because these hours represent time getting up to speed on the facts of the case.  Mr. Norris joined the Blagrave litigation in its later stages.  Nutrition Management objects to: (1) Mr. Norris' time entry on May 14, 2008 for 3 hours to "Review Defendant's Motion for Summary Judgment; Review Plaintiff's Statement of Case;" (2) Mr. Norris' time entry on May 16, 2008 for 2.10 hours to "Research and Prepare Motion for Summary Judgment;" (3) Mr. Norris' May 19, 2008 time entry for 8.20 hours to "Review Deposition Transcripts in Preparation for Opposition to Summary Judgment;" and (4) Mr. Norris' May 20, 2008 time entry for 6.60 hours to "Review Deposition Transcripts and Documents in Preparation for Opposition to Summary Judgment."

As noted above, one attorney could have competently prosecuted Mr. Blagrave's wage claim.  Thus, staffing another attorney on this simple breach of contract action during its later stages was unreasonable.  Accordingly, we will deduct the 19.90 hours Mr. Norris spent for summary judgment briefing

because that was time spent getting "up to speed" on the facts of the case.

Furthermore, we have determined that 6 hours would have been a sufficient amount of time to respond competently to Nutrition Management's motion for summary judgment with respect to the wage claim.  The sheer brevity of the arguments advanced by both sides on the issue at the summary judgment stage supports our reduction.  Nutrition Management's 43 page summary judgment motion devoted only 2 pages of argument to the wage claim.  Similarly, Blagrave's response to the motion for summary judgment addressed the WPCL claim in only 2 of its 35 pages.  Furthermore, with respect to this claim, Blagrave premised its response on the commonly advanced argument that genuine issues of material fact existed.  This argument is not novel and does not require extensive research.  For these reasons, we conclude that 6 hours of Mr. Norris' time was all that was necessary to brief the WPCL issue.

## B. Hourly Rates

In calculating its lodestar value, Blagrave used an hourly rate of $374.20 for Mr. Applegate and $324.17 for Mr. Norris.  Blagrave asserts that these figures represent the average rate for each attorney, which was obtained by indexing "their hourly rates in effect during the course of this matter against the number of hours each attorney spent working on Blagrave's behalf."  Pl.'s Mot. for Att'y Fees, p. 9.  In support of these rates, Blagrave submitted the Declaration of Marc S.

-12-

Raspanti, a partner with Pietragallo, Gordon, Alfano, Bosick & Raspanti.  Mr. Raspanti, a Philadelphia attorney with 24 years' experience, declared that these average hourly rates are reasonable and in line with the prevailing rates charged by similar firms in Philadelphia for attorneys with similar expertise and experience.  Blagrave has also submitted the Declaration of Mr. Harbist in support of this request.  Mr. Harbist stated that the hourly rates requested are consistent with rates charged by firms similar in size and reputation as Blank Rome.  He added that the rates are justified by the level of skill and experience of the attorneys involved.[3]

Nutrition Management contends that the requested hourly rates are excessive.  It specifically objects to the $374.20 hourly rate for Mr. Applegate and the $324.17 hourly rate for Mr. Norris given that they are associates with seven and four years' experience, respectively.  Nutrition Management further notes that the WPCL claim required no specialized experience given its straight-forward nature.

Nutrition Management submits the Community Legal Services, Inc. ("CLS") fee schedule as evidence of the prevailing market rates in Philadelphia.  However, it has not submitted any

---

3.  Mr. Harbist attaches to his declaration the profiles of Mr. Applegate and Mr. Norris from the Blank Rome website.  Mr. Applegate was graduated from law school in 2001 and currently concentrates his practice at Blank Rome in complex corporate and commercial litigation matters.  Mr. Norris was graduated from law school in 2004 and focuses his practice on general litigation and dispute resolution.

affidavits to rebut Mr. Raspanti's declaration concerning the reasonable hourly rates of attorneys with similar experience and expertise as Mr. Applegate and Mr. Norris practicing at large law firms, such as Blank Rome.

Our Court of Appeals has advised that a "reasonable hourly rate is calculated according to the prevailing market rate in the relevant community." Maldonado, 256 F.3d at 184. We must "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id. (citing Dellarciprete, 892 F.2d at 1183). The party seeking fees "bears the burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits,... that the requested hourly rates meet this standard." Id. (citing Washington v. Philadelphia Cty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996)) (internal quotation omitted); Evans v. Port Authority of New York and New Jersey, 273 F.3d 346, 361 (3d Cir. 2001). The attorney's usual billing rate informs our analysis of a reasonable rate, although it is not dispositive. Maldonado, 256 F.3d at 184.

Nutrition Management has failed to rebut Blagrave's prima facie case of the reasonableness of the rates requested for Mr. Applegate and Mr. Norris. It has not challenged the qualifications of Mr. Raspanti to opine on this issue, and it has submitted no affidavit and offered no testimony contesting the

-14-

accuracy of Mr. Raspanti's statements regarding the rates for attorneys in Philadelphia with similar experience and expertise. Thus, we will not depart downward from the requested hourly rate of $374.20 for Mr. Applegate and $324.17 for Mr. Norris. <u>Washington</u>, 89 F.3d at 1036.

### C. Lodestar Calculation

We will now calculate the lodestar figure for (1) pretrial tasks, (2) summary judgment briefing, (3) trial preparation, and (4) trial.  The total of these figures will be the attorneys' fee award.

According to our analysis of the time sheets submitted by Blagrave, Mr. Applegate billed 171.3 hours on pretrial tasks. As discussed above, this number is excessive given the relatively elementary cause of action prosecuted.  Having presided over this litigation from its inception and after a careful review of the time charged, we have determined that a total of 20 hours on pretrial tasks would have been a reasonable number of hours to bill for Mr. Blagrave's wage claim.  Mr. Applegate's hourly rate of $374.20 multiplied by 20 hours equals $7,484.00, which Blagrave may recover for pretrial tasks, including discovery.

For summary judgment, Mr. Norris billed 77.8 hours and Mr. Applegate billed 6.1 hours.  We concluded that 6 hours would have been a reasonable number of hours to prepare and draft a response to the summary judgment motion on Mr. Blagrave's simple wage payment claim.  Given that Mr. Norris took the laboring oar on the summary judgment briefing, we will award attorneys' fees

-15-

for this task at his rate of $324.17.  The total amount that
Blagrave may recover for briefing the summary judgment motions is
$1,945.02.

For trial preparation, we concluded that 8 hours is a
reasonable amount of time to have spent preparing to prosecute
Mr. Blagrave's simple wage claim.  Given that Mr. Applegate was
primarily responsible for trying the case, we will award these
hours at his rate of $374.20 for a total of $2,993.60.  Finally,
we will award the entire 4 hours of trial time at Mr. Applegate's
rate of $374.20 for a total of $1,496.80.

The total amount of attorneys' fees for the WPCL claim
that Mr. Blagrave may recover is $13,919.42.

### D. Costs

Blagrave is also entitled to recover the costs expended
in litigating his WPCL claim.  He seeks $9,705.13 in costs.  We
will first address the specific objections of Nutrition
Management to a number of discrete costs.  Nutrition Management
singles out the costs associated with long distance telephone
calls, telephone conference calls, telecopier/fax, federal
express, hand delivery service, express delivery service and
reproduction of documents as objectionable because the plaintiff
failed to submit adequate documentation or a detailed explanation
for them.  Mr. Harbist's supplemental declaration in support of
Blagrave's motion for attorneys' fees explains that Blank Rome
bills these costs to its clients in the ordinary course of
business at rates consistent with rates charged in the

Philadelphia area for similar expenses.  According to Mr.
Harbist, these costs are assigned to clients based on their
individual case identification number.  As these costs are
incurred, they are recorded contemporaneously on the client's
billing sheet.

  Although this may be an appropriate way to document
these costs, Blagrave has failed to explain the nature of the
telephone calls, faxes, federal express, and delivery services.
Therefore, we are unable to determine what portion of these costs
were expended in pursuit of the wage claim versus the SOX claim.
This court has held that counsel must adequately document costs
in order for them to be recoverable.  Becker v. ARCO Chem. Co.,
15 F. Supp. 2d 621, 637 (E.D. Pa. 1998).  Accordingly, we will
only award Blagrave 10% of these costs, which seems to us to be a
reasonable allocation.

  Nutrition Management objects to the service costs
incurred on April 7, 2005 because the subpoena was served in
connection with Mr. Blagrave's pursuit of his SOX claim in his
Department of Labor proceeding.  Blagrave concedes that this
subpoena was served in connection with the Department of Labor
claim but counters that the facts adduced at the deposition of
Joseph Roberts furthered the development of the common core of
facts crucial to the success of the wage claim.  Even if the
information obtained at the deposition was helpful to its case,
the plaintiff may not recover costs incurred in the prosecution
of a proceeding other than this one.  Accordingly, the costs

-17-

associated with this deposition, including the subpoena service
costs of $29.95 and the deposition transcription costs, are not
recoverable.

Blagrave requests reimbursement for numerous lunches,
which he characterizes as attorney meal costs incurred in the
ordinary course of business while pursuing this litigation.  We
agree with the court's reservations in Becker v. ARCO Chemical
Corp., 15 F. Supp. 2d 621, 637 (E.D. Pa. 1998), that attempting
to charge the defendant for the cost of a lunch on an ordinary
workday when no travel is involved is inappropriate.  There is
simply no reason that a client or the defendant should be forced
to reimburse attorneys for the cost of an ordinary, workday lunch
when the attorneys would have had to purchase those lunches in
any event.  We will not allow reimbursement for meal charges
incurred on typical workdays.  We will also not allow
reimbursement for the meal on June 29, 2008, which Blagrave
submits was an attorney meal cost incurred in the course of this
litigation on a non-business day.  Blagrave has not explained the
necessity for this cost, and it will not be reimbursed.

In response to Nutrition Management's claim that the
costs on March 28, 2008 labeled "Meeting Expenses - Aramark
Corporation Deposition/Blagrave Deposition" are inadequately
documented and explained, Blagrave explains that this reflects
the refreshment charge associated with the deposition of Richard
Blagrave.  A copy of the receipt for this charge is attached to
Mr. Harbist's supplement declaration.  We will award Blagrave 10%

-18-

of this cost as a reasonable allocation because most of the Blagrave deposition was devoted to the SOX claim.

Nutrition Management contends that the costs of parking and tolls, which Blagrave requests for numerous days throughout the litigation, are not recoverable where there were no scheduled court appearances or conferences.  Blagrave counters that travel expenses reasonably incurred so that attorneys may meet to discuss case strategy should be reimbursed.  This explanation is too vague for us to determine whether such charges are proper. Blagrave fails to explain why these meetings were necessary, does not identify the location of the case strategy meetings, or the purpose of the meetings, and why Mr. Norris, who incurred the parking and toll charges, was required at the meetings.  These costs may not be charged to the defendant given the lack of explanation and description of them.

Nutrition Management does not dispute the remaining costs but asserts they should be reduced by 75% as a means of isolating those costs incurred solely for the WPCL claim.  These costs include filing fees, service costs, travel expenses to attend court conferences and depositions, and reproduction costs. We agree with Nutrition Management that only a portion of these costs are recoverable given Blagrave's failure to isolate those costs incurred solely for the wage claim.  Accordingly, we will only award Blagrave 25% of these costs.

The following summarizes our award of costs.

-19-

| Cost | Amount Requested | Amount Granted |
|------|------------------|----------------|
| Long Distance Telephone Calls | $   73.50 | $     7.35 |
| Telephone Conference Calls | $   21.32 | $     2.13 |
| Telecopier/Fax | $  145.95 | $    14.59 |
| Federal Express | $  154.81 | $    15.48 |
| Hand Delivery Service | $   13.00 | $     1.30 |
| Express Delivery Service | $   17.50 | $     1.75 |
| Reproduction of Documents | $2,438.00 | $   243.80 |
| Service Costs | $   29.95 | $     0.00 |
| Transcript – Hill and Roberts | $1,201.50 | $     0.00 |
| Transcript – Blagrave | $  871.80 | $     0.00 |
| 3/20/08 Meeting Expenses | $   15.00 | $     0.00 |
| Meeting Expenses – Pat's Pizzeria | $   27.77 | $     0.00 |
| Meeting Expenses – Kit Applegate Lunch | $   35.96 | $     0.00 |
| 3/28/08 Meeting Expenses | $   19.20 | $     1.92 |
| 5/28/08 Parking, Tolls | $   60.00 | $     0.00 |
| 6/2/08 Parking, Tolls | $   25.00 | $     0.00 |
| 6/10/08 Parking, Tolls | $   25.00 | $     0.00 |
| 6/29/08 Jason W. Norris Public House | $   23.37 | $     0.00 |
| 7/11/08 Jason Norris Lunch | $   39.87 | $     0.00 |
| 7/16/08 Meeting Expenses | $   24.15 | $     0.00 |
| Remaining Costs | $4,640.41 | $1,160.10 |
| TOTAL COSTS RECOVERABLE: | | $1,448.42 |

### E. Attorneys' Fees Incurred Preparing this Motion

Finally, Blagrave requests an additional award of $35,727.50 to compensate him for the time spent briefing this motion for attorneys' fees and costs.  Counsel may recover their reasonable costs in preparing the fee petition in a statutory fee-shifting case.  Prandini v. Nat'l Tea Co., 585 F.2d 47, 53 (3d Cir. 1978).

Mr. Harbist's Supplemental Declaration states that Mr. Harbist spent 2.7 hours, Mr. Applegate spent 19.3 hours, and Mr. Norris spent 83.8 hours for a total of 105.8 hours briefing this issue.  With the benefit of having reviewed the papers filed in connection with this motion in exhaustive detail, we conclude that 105.8 hours is an unreasonable amount of time to have spent on this task.  First, the staffing of three attorneys on this motion resulted in an unnecessarily large number of attorney conferences and time spent reviewing the fee petition.  Mr. Norris appears to have been primarily responsible for preparing this motion, while Mr. Harbist and Mr. Applegate primarily edited and revised it.  All of Mr. Harbist's time entries document time spent conferring with either Mr. Norris and Mr. Applegate on the motion or reviewing and revising the drafts of the motion. Similarly, Mr. Applegate appears to have spent a significant amount of his time conferring with Mr. Harbist and Mr. Norris or reviewing and revising the briefs.  The briefing on this issue could have been supervised by one senior attorney, which would

-21-

have streamlined the hours spent in conferences and reviewing and revising the briefs.

Additionally, the approximately 83 hours spent by Mr. Norris researching and preparing the motion is patently excessive.  Although the briefing required review of three years' worth of time records, the original brief only totaled 13 pages and the reply brief only totaled 14 pages.  Furthermore, the law on recovery of attorneys' fee is not novel, nor particularly complicated.

In light of these considerations, we will award attorneys' fees for preparing this motion as follows:  (1) 1 hour of Mr. Applegate's time at the hourly rate of $374.20 for a total of $374.20; and (2) 10 hours of Mr. Norris' time at the hourly rate of $324.17 for a total of $3,241.70.  Thus, Blagrave may recover $3,615.90 in attorneys' fees for preparing this motion.

III.

In conclusion, we will grant the plaintiff's motion for attorneys' fees and costs, but not for the amounts requested. The plaintiff may recover:  (1) $13,919.42 in attorneys' fees for prosecuting his claim under the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. Ann. § 260.1 et seq; (2) $1,448.42 in costs; and (3) $3,615.90 in attorneys' fees in connection with preparing the motion for attorneys' fees and costs.  Accordingly, he is entitled to a judgment of $18,983.74.

                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF PENNSYLVANIA


RICHARD BLAGRAVE                  :          CIVIL ACTION
                                  :
              v.                  :
                                  :
NUTRITION MANAGEMENT              :
SERVICES CO., et al.              :          NO. 05-6790


                                ORDER


          AND NOW, this 20th day of February, 2009, for the

reasons set forth in the accompanying Memorandum, it is hereby

ORDERED that:

          (1)  the motion of Richard Blagrave for attorneys' fees

and costs is hereby GRANTED;

          (2)  judgment is entered in favor of the plaintiff,

Richard Blagrave, and against the defendants, Nutrition

Management Services Co., Joseph Roberts, and Kathleen Hill, in

the amount of $18,983.74 for attorneys' fees and costs.

                              BY THE COURT:


                              /s/ Harvey Bartle III
                                                        C.J.